BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK NJ 07601-7680

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (201) 527-2600
COURT HOURS 8:30 AM - 4:30 PM

DATE: AUGUST 18, 2017
RE: NORTH JERSEY BRAIN & SPINE CENTER VS AETNA
DOCKET: BER L -005603 17

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 2.

DISCOVERY IS 300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE PRETRIAL JUDGE ASSIGNED IS: HON ROBERT L. POLIFRONI

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 001 AT: (201) 527-2600.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.

PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: ERIC D. KATZ
MAZIE SLATER KATZ & FREEMAN
103 EISENHOWER PARKWAY
ROSELAND NJ 07068

JUBTRU0

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Attorneys for Plaintiff*

SUPERIOR COURT BERGEN COUNTY
FILED
AUG 18 2017
DEPUTY CLERK

| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIV., BERGEN COUNTY<br>DKT. NO. BER-L-5803-17<br><br>Civil Action<br><br>**COMPLAINT & JURY DEMAND** |
|---|---|

Plaintiff, North Jersey Brain & Spine Center, by way of Complaint against defendant, alleges as follows:

## THE PARTIES

### A. The Plaintiff

1. Plaintiff North Jersey Brain & Spine Center ("NJBSC") is a medical practice specializing in spine surgery and treatment. NJBSC maintains its offices at 680 Kinderkamack Road, Suite 300, Oradell, New Jersey 07649. At all relevant times, NJBSC was an out-of-network, or non-participating, healthcare provider with respect to defendant and provided emergency, medically necessary surgical services to its patient, A.T. (full name withheld to protect the patient's confidentiality) (Aetna ID No. W147660361), who

was covered under a healthcare plan sponsored, funded, operated, controlled and/or administered by defendant.

**B. The Defendant**

2. Defendant Aetna Life Insurance Company ("Aetna") maintains its corporate office at 151 Farmington Avenue, Hartford, Connecticut 06156 and, at all relevant times, Aetna provided out-of-network emergency healthcare coverage to A.T. under a fully-insured New Jersey healthcare plan.

3. Aetna has been sanctioned in the past by the New Jersey Department of Banking and Insurance for its failure to properly pay for emergency services, such as the services rendered by NJBSC to A.T., and was ordered to pay a multi-million dollar fine due to its improper claims processing.

**SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS**

4. At all relevant times, plaintiff NJBSC was an out-of-network, or non-participating, healthcare provider regarding defendant and the emergency services rendered to A.T.

5. At all relevant times, patient A.T. was covered under an Aetna fully-insured New Jersey healthcare plan. Under this plan, when emergency services are required, A.T. is expressly permitted, by law, to seek treatment from any out-of-network provider, precisely what A.T. did here.

6. On April 15, 2016, A.T. was involved in a motor vehicle accident resulting in neck pain and significant neurologic deficit and weakness. The patient was admitted through the Emergency Room of the Hackensack University Medical Center at Pascack Valley. A.T. was imaged and found to have a very large cervical disk herniation with cord

compression as well as significant neural compression. As a result, an emergency cervical discectomy and fusion were performed on the patient.

7. Because A.T.'s injuries and the need for emergency surgery arose from a motor vehicle accident, NJBSC first submitted its bill, containing usual, customary and reasonable ("UCR") charges totaling $107,562.50, to the patient's PIP carrier, Farmers Insurance Company ("Farmers"). The Farmers' policy was the primary policy responding to the claim.

8. Significantly, the most complex surgical codes are, pursuant to New Jersey PIP law, not subject to fee scheduling and thus, under New Jersey PIP law, compensable at UCR rates, which is what NJBSC billed. See N.J.A.C. 11:3-29.4(e).

9. Furthermore, the Farmers' PIP policy only had a $15,000 limit.

10. On or about July 5, 2016, Farmers issued an Explanation of Review to NJBSC along with payment of $15,000.00, representing the full PIP policy limits.

11. After receipt of the Farmer's Explanation of Review, NJBSC timely submitted the Explanation of Review to Aetna, the secondary payor, for appropriate processing and additional payment under A.T.'s health insurance.

12. On or about December 13, 2016, Aetna issued additional payment of $71,050.00.

13. However, on or about February 17, 2017, Aetna's recoupment agent, Cotiviti, demanded that NJBSC refund to Aetna $64,250.94. The basis of the recoupment demand was Cotiviti's erroneous understanding and application of New Jersey PIP law to Aetna's obligations as the secondary healthcare payor.

14. According to Cotiviti, Aetna's secondary payment should have been based on the primary payor's (Farmer's) allowed amount. Moreover, according to Cotiviti, because NJBSC's bill was subject to PIP fee scheduling, NJBSC would not be entitled to any additional payments beyond nominal payment from Aetna because it could not balance bill the patient.

15. However, Cotiviti's understanding and application of New Jersey PIP law is flatly erroneous. As an initial matter, New Jersey PIP regulations do not even apply to the adjudication of claims by health insurers as a matter of law. See N.J.A.C. 11:3-29.1(d)(2) ("This subchapter does not apply to the following: . . . (2) Any other kind of insurance including health insurance, even when the health insurer may be required pursuant to its health insurance contract to pay benefits to, or on behalf of, a person who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile . . . .") (emphasis added).

16. And even if NJ PIP regulations did apply to Aetna's obligations, as was addressed supra, the most significant surgical services are not subject to fee scheduling and thus are payable at UCR rates. It follows that because the Farmers' policy had exhausted, with the payment of $15,000.00 to NJBSC, the remainder of plaintiff's claim was compensable at UCR rates and is still the patient's responsibility, and thus Aetna's responsibility to process and pay correctly.

17. On or about February 24, 2017, NJBSC filed an appeal with Aetna. In that appeal plaintiff addressed certain relevant aspects of New Jersey PIP law that Aetna and/or its recouping agent failed to understand or apply correctly. NJBSC therefore contested the recoupment demand and refused to issue Aetna the requested refund.

18. On or about May 4, 2017, Aetna nonetheless deducted $64,250.94 from receivables due to NJBSC for unrelated services to other patients, labeling the erroneous recoupment a "payment correction."

19. In this lawsuit, NJBSC challenges Aetna's wrongful and unlawful understanding and application of New Jersey PIP law. In addition, plaintiff challenges Aetna's original payment of $71,050.00 as a violation of New Jersey regulations governing the payment for emergency services rendered by out-of-network providers requiring Aetna to pay up to 100% of billed charges in order to avoid the balance billing of the patient.

20. Pursuant to New Jersey law and regulations, defendant was and is obligated to pay NJBSC 100% of its billed UCR charges, less the patient's copay, coinsurance or deductible, if any, for emergency services and, in addition, was and is required to make payment to plaintiff within the time period set forth in the Healthcare Information Networks and Technologies Act ("HINT") and the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), *i.e.*, 30 days for electronic claims and 40 days for non-electronic claims for all services. Under these statutory and regulatory schemes, interest is due to plaintiff for late paid claims.

21. The UCR fee is defined as, or is reasonably interpreted to mean, the amount that out-of-network providers, like plaintiff, normally charge to patients in the free market, *i.e.*, without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to the defendant's members and beneficiaries. The UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience (*i.e.*, north New Jersey neurosurgical and spine surgical practice).

22. Moreover, when emergency services are rendered, such as those rendered by plaintiff, an out-of-network provider, to A.T. pre-authorization or pre-approval is not required.

23. With respect to patient A.T. and the claim referenced above, as well as a matter of regular business practice, plaintiff engaged in regular communications and discussions with Aetna, including submission of its claims directly to Aetna and continuing telephonic follow-up with Aetna on the status of processing and payment. In addition, (under)payment for the subject claims was made by Aetna directly to NJBSC. Aetna also directly issued to plaintiff Explanation of Benefit statements, and NJBSC undertook and engaged in a direct appeal of defendant's reimbursement and payment decisions.

24. Throughout the parties' course of dealings and numerous forms of communication and interaction, Aetna voluntarily and freely engaged with and dealt directly with NJBSC. Nor did defendant ever advise, reference or disclose to NJBSC any impediment to dealing directly with plaintiff to resolve these and other reimbursement disputes. NJBSC relied in good faith on defendant's conduct and the parties' course of dealings.

25. By and through this lawsuit, NJBSC now seeks damages, including prompt payment interest, from defendant that it is obligated to pay under New Jersey statutes and regulations for late paid claims.

26. All of the subject claims arise from New Jersey state common, statutory and regulatory law, and not from any purported federal law or statute. Plaintiff has asserted direct claims and causes of action that are not predicated on an assignment of benefits from the patient.

27. The claims in this lawsuit dispute the reimbursement amounts paid by defendant and thus do not arise under or implicate federal subject matter jurisdiction under the Employee Retirement Income Security Act (ERISA), or any other federal or statutory regulatory scheme. This lawsuit addresses defendant's failure to provide the appropriate *amount* of coverage to the patient and defendant's failure to properly *reimburse* plaintiff for its services to that patient. There is no dispute that defendant's plan at issue provides coverage for A.T. and the emergent medical and surgical services rendered by plaintiff that are in dispute. This is also no dispute that the emergency services regulations, prompt payment statutes/regulations, and applicable PIP insurance regulations are "saved" from ERISA conflict preemption.

**FIRST COUNT**
**(Breach of Implied Contract)**

28. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

29. Defendant indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that defendant would pay for the emergency surgical services provided by plaintiff to A.T.

30. Defendant represented that, at all relevant times, A.T. was covered for out-of-network emergency care, under the patient's plan, and that the patient could go to any doctor or emergency room when the patient required emergency care, and that under New Jersey insurance regulations, the patient would only be responsible to pay the plan's copayments, coinsurance and deductibles at an in-network level when emergency services were rendered.

31. Defendant further failed to understand and apply the applicable PIP insurance regulations correctly.

32. Defendant also know that New Jersey providers, like NJBSC, are required by law to treat defendant's members and beneficiaries if they require emergency medical care.

33. Defendant further indicated to NJBSC by a course of conduct, dealings and the circumstances surrounding the relationship, including applicable New Jersey statutes and regulations, that defendant would pay billed UCR rates for emergency care that are based upon what other healthcare providers of the same specialty in the same geographic area charge for the services rendered by NJBSC.

34. NJBSC rendered emergent, medically necessary surgical and medical services to A.T., and in doing so, plaintiff reasonably expected defendant to properly compensate plaintiff.

35. A reasonable person in the position of defendant would know or reasonably should have known that plaintiff was performing the services expecting that defendant would pay for them appropriately.

36. Despite indicating to NJBSC by a course of conduct, dealings and the circumstances surrounding the relationship that defendant would properly reimburse plaintiff its billed UCR charges as an out-of-network provider rendering emergency services, defendant failed to do so.

37. The failure of defendant to pay proper rates for the emergency services rendered by plaintiff to A.T., and defendant's failure to proper apply NJ PIP regulations to

plaintiff's claims, constitutes breach of the implied contract between defendant and NJBSC.

38. As a result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorneys' fees; and

e) Such other relief as the Court deems equitable and just.

**SECOND COUNT**
**(Breach of the Covenant of Good Faith & Fair Dealing)**

39. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

40. The law implies in every contractual relationship, including the implied contract between plaintiff and defendant, a covenant of good faith and fair dealing. Defendant is required to act in a manner that is consistent with plaintiff's reasonable expectations.

41. Defendant acted with an improper motive and injured plaintiff's rights and benefits under the contract, and breached the contract through acts of commission and omission described herein that are wrongful and without justification.

42. As a result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorneys' fees; and

e) Such other relief as the Court deems equitable and just.

**THIRD COUNT**
**(Unjust Enrichment & *Quantum Meruit*)**

43. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

44. Defendant has enriched itself unjustly at the expense of plaintiff NJBSC.

45. Defendant refused to pay NJBSC correctly for the emergency surgical services it provided to A.T. contrary to the New Jersey common law, statutory and regulatory obligations of defendant.

46. Defendant was paid premiums by A.T. for out-of-network emergency services coverage and, pursuant to said premiums, defendant was legally obligated to provide such coverage to A.T. and properly pay for emergency services.

47. To satisfy its coverage and legal obligations, defendant required the services of NJBSC to render the emergency services to A.T. Plaintiff did, in fact, render such surgical services to A.T.

48. Defendant has, therefore, received and retained a benefit as a result of plaintiff rendering emergency surgical services to A.T. that remain grossly underpaid. Thus, defendant has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to plaintiff.

49. As a result of defendant's unjust enrichment, plaintiff has suffered damages.

**WHEREFORE**, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorneys' fees; and

e) Such other relief as the Court deems equitable and just.

**FOURTH COUNT**
**(Interference with Economic Advantage)**

50. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

51. NJBSC had a reasonable expectation of economic advantage or benefit belonging or accruing to the plaintiff.

52. Defendant knew, or reasonably should have known, of plaintiff's expectancy of economic advantage.

53. Defendant wrongfully interfered with plaintiff's expectancy of economic advantage or benefit.

54. But for defendant's wrongful acts, it is reasonably probable that plaintiff would have realized its economic advantage or benefit.

55. As a result, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorneys' fees; and

e) Such other relief as the Court deems equitable and just.

**FIFTH COUNT**
**(Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered by an Out-of-Network Provider)**

56. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

57. New Jersey's health insurance regulations require that, when a privately-insured patient seeks emergency services, an out-of-network provider must be paid a large enough amount to ensure that the patient is not balance billed, that is, charged for the difference between the insurer reimbursed amount and the provider's billed charges. This so-called "Emergency Room Mandate" applies even if it means that the payor, defendant herein, must pay the provider its actual billed charges minus the copayments, coinsurance and deductibles that would have applied had the patient sought treatment from an in-network provider.

58. NJBSC has a private right of action, express or implied, to prosecute its claim under these regulations.

59. Defendant is obligated to pay NJBSC one-hundred percent (100%) of plaintiff's UCR fees, less the patient's applicable copay, coinsurance or deductible, pursuant to N.J.A.C. 11:22-5.8, 11:24-5.3, 11:24-5.1, and 11:24-9.1(d).

60. Contrary to New Jersey healthcare regulations, however, defendant has not properly paid plaintiff for the emergency surgical services rendered to A.T. and plaintiff's bills remain outstanding for those services.

61. As a result of defendant's violations of these health insurance regulations and related legal obligations, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorneys' fees; and

e) Such other relief as the Court deems equitable and just.

**SIXTH COUNT**
**(Violations of HINT & HCAPPA)**

62. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

63. Pursuant to the Healthcare Information Networks and Technologies Act ("HINT"), N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1, and the corresponding regulations, N.J.A.C. 11:22-1, *et seq.*, defendant is required to remit payment to a healthcare provider for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by defendant, or forty (40) calendar days following non-electronic receipt of the claim by defendant. In the alternative, defendant is required to notify the provider within seven (7) calendar days of the specific reasons for a denial or dispute, and to expeditiously request any missing information or documentation required to process the claims, pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA").

64. Plaintiff has a private right of action, express or implied, to prosecute its claims under HINT, HCAPPA and their regulations.

65. All overdue payments must bear simple interest at the rate of ten (10) percent per annum, pursuant to HCAPPA.

66. Despite its statutory duties, defendant as a matter of practice and/or policy delayed payment of properly submitted claims from plaintiff and did not pay the claims correctly, and then did not pay proper interest on the delayed payments. By delaying payment of a claim, defendant earned and continues to earn profits from its use of the funds, profits that it would not have earned or continued to earn if payment were made to plaintiff in a timely manner.

67. NJBSC submitted "clean" or "eligible" non-capitated claims related to the services to A.T. that defendant failed to pay correctly within the prescribed statutory time-period despite attempts by plaintiff to address and resolve these issues with defendant. These practices by defendant are in violation of HINT and HCAPPA.

68. As a result of defendant's violations of HINT and HCAPPA, plaintiff has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

d) Attorneys' fees; and

e) Such other relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Attorneys for Plaintiff*

By:__________________________
ERIC D. KATZ

DATED: August 17, 2017

**DESIGNATION OF TRIAL COUNSEL**

Plaintiff hereby designates Eric D. Katz, Esq. as trial counsel in the above matter.

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Attorneys for Plaintiff*

By:________________________
ERIC D. KATZ

DATED: August 17, 2017

**CERTIFICATION PURSUANT TO RULE 4:5-1(b)2**

ERIC D. KATZ, of full age, hereby certifies that:

1 I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for plaintiff in this action.

2. To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding.

3. No other actions or arbitration proceedings are contemplated by this plaintiff against the pled defendant at this time.

4. I know of no other parties that should be joined in this action at this time. I certify that the foregoing statements made by me are true. I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

________________________
ERIC D. KATZ

DATED: August 17, 2017




Writer's Direct Dial: 973-228-0151

November 22, 2017

**VIA CERTIFIED AND REGULAR MAIL – RETURN RECEIPT REQUESTED**
Aetna Life Insurance Company
151 Farmington Avenue
Hartford, CT 06156

Re: North Jersey Spine Group, LLC v. Aetna Life Ins. Co.
Docket No.: BER-L-5532-17

Dear Sir/Madam:

Enclosed please find a Summons and a copy of the filed Complaint with regard to the above matter. I have also enclosed a copy of the Affidavit of Diligent Inquiry. Please be guided accordingly.

Thank you for your immediate attention to this matter.

Very truly yours,

ERIC D. KATZ

EDK/av
Enclosures